GUST AHLSON, Appellee, v. HIGH BRIDGE COAL COMPANY, Appellant.

NEGLIGENCE: Actions—Trial, etc.,—Jury Questions. The *ade-*
1 *quacy* of inspections of a known dangerous place of work, and not the *number* of inspections, is the material inquiry on the question whether the master was negligent because of a failure to adequately inspect; therefore, repeated inspections by the master, just prior to an accident, of an admittedly treacherous mine entry roof, do not necessarily establish the master's free-dom from negligence. Record reviewed, and held to present a jury question.

NEGLIGENCE: Evidence—Admissibility—Statements of Mine
2 Foreman. Statements of a mine foreman to his subordinate em-ployee as to the reason for delaying the timbering of the entry to a mine do not constitute a mere *admission* of an agent, but may tend to show negligence on the part of the master in that the master "took chances" on the falling of a known dangerous roof.

TRIAL: Instructions—Applicability to Evidence, etc.—Negligence.
3 Instructions non-applicable to evidence or pleadings are prop-erly refused. So held where requested instruction bore on the effect of plaintiff's failure to reasonably inspect his place of work, the evidence conclusively showing that plaintiff had fully exercised his opportunity and means of inspection.

MASTER AND SERVANT: Damages—Physician Called by By-
4 stander—Ratification. One wrongfully injured by another may-recover the value of services rendered by a physician called, at

the time of the injury, by a bystander on his own motion. The act of attempting to recover therefor is a ratification of the bystander's unauthorized act.

**EVIDENCE:** Opinion Evidence—Value of Services—Values Manifestly Moderate. Testimony placing the value of services, in view of the record, at a manifestly moderate figure, affords no just basis for complaint, even though the witness did not fully qualify as an expert.

*Appeal from Dallas District Court.*—WM. H. FAHEY, Judge.

WEDNESDAY, JUNE 20, 1917.

ACTION for personal injuries sustained in a coal mine accident. The plaintiff was an employee, and was severely injured by a fall of slate while engaged in his work. There was a verdict for the plaintiff, and the defendant has appealed.—*Affirmed.*

*Stipp, Perry, Bannister & Starzinger* for appellant.

*Jno. T. Clarkson,* for appellee.

EVANS, J.—The defendant is a corporation engaged in coal mining. It was not operating under the Workmen's Compensation Law. The plaintiff had been in the employment of the defendant for only a few months, at the time of the accident. He was not a coal miner in the usual sense of the term, but was a common laborer engaged as a helper in doing work here and there about the mine. At the time of the accident, he was engaged in loading dirt into a car in an entry of the mine. The entry roof was not timbered at the place of the accident. The duty of inspection and timbering the entry was primarily upon the timber men. The two timber men were present in the entry within a few feet of the plaintiff at the time of the accident.

1. One of the grounds of negligence charged in the petition was that the defendant had failed to make an adequate inspection of the entry roof. The trial court submitted the question by an instruction. It is contended by the defendant that this instruction should not have been given, because the undisputed evidence shows repeated inspections every few hours on the day of the accident, and that such showing fully met all the requirements of the law pertaining to inspection. The roof was of slate. This slate contained many "lime seams." These seams consisted of white streaks through the slate, and were supposed to contain more or less lime which slacked by contact with the air. The evidence on both sides shows that such a condition of the slate roof is very treacherous, in that the disintegration is not observable, and that there is no fixed time for its taking place, nor much warning of its loosening effect. The roof, upon tapping, may sound firm, and yet fall within a few moments thereafter. The timber men testified that they inspected the roof at half past seven in the morning, and twice thereafter, at appropriate intervals. The accident happened at 2:30 P. M. Half an hour before, the plaintiff himself tested it by tapping with his shovel, and discovered nothing wrong. The plaintiff, however, was inexperienced in such an inspection, and was unable to form any judgment as to the safety of the roof, except as to small pieces which might appear to be loosening on the surface. It is urged that the inspections here referred to should be deemed conclusive on that question. The question of the adequacy of these inspections, however, was something clearly to be considered by the jury. This entry was eight feet wide, and ought to have been timbered, in the ordinary course of the practice of mining in that locality. The presence of lime seams was a recognized danger, and emphasized the need of the timbers. The entry had been once

1. NEGLIGENCE: actions: trial, etc.: jury questions.

timbered, but the timbers at this particular place had been blown out by some shot firing in the course of turning a room at such place. The shot firing always occurs at night, and frequently results in blowing out timbers. The timbers thus blown out are ordinarily replaced in the morning. The first timbers that were blown out at this place were replaced the following morning. Subsequently, they were again blown out. Their replacement was then delayed for a period of from four days to a week. The lime seams disintegrate more rapidly in an entry than in a room, because of the circulation of the air currents therein. One of the sure evidences of a settling roof is a cutting at the angle between roof and rib. This cutting was manifest in this entry for a day or two prior to the accident. It was observed by the timber men in their inspections, but the warning thereof was ignored. The duty of inspection necessarily involves the question of its adequacy. The state of the record would justify a finding by the jury adverse to the defendant on the question of adequate inspection. There was, therefore, no error in submitting the instruction complained of.

2. NEGLIGENCE: evidence: admissibility: statements of mine foreman.

2. The witness Williams was one of the timber men whose duty it had been both, to inspect and timber the entry in question. His testimony tended to show some reasons why he had delayed the timbering of the entry at this place. The reasons thus indicated were that, by reason of having raised the floor of the entry in a dip, it became necessary to take down a part of the roof in order to make such an entry high enough for the mule. He also testified in effect that such were the instructions from the assistant foreman, Joplin. Objection was urged to his testimony concerning any statements or instructions of Joplin, on the general ground that the mere admissions of an agent are not binding upon his principal. The general legal prop-

osition thus urged may be conceded. It is not applicable, however, to the testimony herein. No effort was made to show a subsequent statement or admission of Joplin's. The instructions referred to were those given in advance of the accident, and pertained to the very duties imposed by law upon the defendant company and imposed by the defendant company upon its foreman, and through him upon its timber men. We think the testimony was pertinent to the inquiry whether the delay in the timbering was justifiable or unjustifiable. Such evidence tends to show that the purpose of the timber men was to take down a part of the roof at this point as soon as it became loose enough. They appreciated the possibility of its falling by the natural process of disintegration, but they deemed that as more likely to happen at night, as a result of the shot firing. We think the evidence had a clear tendency to show negligence, in that they knowingly took chances of a falling roof which they could readily have avoided by the use of temporary timbers.

3. TRIAL: instructions: applicability to evidence, etc.: negligence.

3. The defendant requested three instructions on the question of contributory negligence. The substance of Numbers 1 and 2 thus requested was given by the court in Instruction Number 8. This instruction charged the plaintiff with the duty to exercise ordinary care for his own safety, and advised the jury that a failure on his part in that regard would be contributory negligence, and as such should be taken into consideration by the jury in reduction of his damages, if any. The third instruction requested by the defendant bore also upon the question of contributory negligence, and instructed that:

"If you find that the plaintiff failed to examine the place where he was working as a reasonable man would, under the same or similar circumstances, then the plaintiff himself was negligent," etc.

Except as bearing somewhat more specifically upon the express provisions of the statute, this instruction added nothing to what was requested in Instructions 1 and 2, and which was given, as above stated. There was no basis in the pleading or in the evidence for the instruction in this particular form. The evidence is undisputed that the plaintiff did examine the roof as far as his limited experience would permit. He had been sent to this place from another part of the mine in the middle of the day to load the dirt in question. The timber men were in charge of the entry and were engaged in timbering the neck of a room turned therefrom. The usual method of testing a roof is by the knock of a hammer or sledge or pick. The plaintiff was equipped for his work with none of such tools. He had simply a shovel, which was not naturally adaptable to tapping. It may well be doubted whether this entry could be deemed "his" working place, within the meaning of the statute. The room of a miner is his working place. The duty of inspection and timbering is upon him continuously. The entry is not his working place, even though he must pass through it in order to enter his room. He has no duty of inspection nor of timbering therein. True, he is required to exercise reasonable care for his own safety at all times and places. But the specific duties enjoined upon him by the statute do not have reference to the entry. The care of the entry, including its timbering, rests with the company itself. Whether a different rule should apply to such an employee as the plaintiff because he was actually at work therein may present a somewhat different question. We need not pass thereon herein. The plaintiff was under no duty of repair or of timbering. His only duty was to use reasonable care for his own safety. The court so instructed. The evidence is undisputed that he was inexperienced, and that he did examine the roof; that the experienced timber men were present at that time, and that there was no sign

of danger then observable to an inexperienced man. In this state of the record, we would not be justified in saying that there was error in the failure of the court to give an instruction in the form asked by the defendant.

4. The plaintiff was severely injured, and was for a time unconscious. He was extricated from the debris and brought to the surface. Somebody called Dr. Shaw, a physician of Madrid. Dr. Shaw came and administered first aid. The plaintiff was hurried to the hospital at Des Moines. Dr. Shaw came with him. A surgical operation was immediately performed by Dr. Lincoln, with the aid of Dr. Shaw. As bearing upon the amount of his recovery, the plaintiff was permitted to introduce evidence of the value of the services of Dr. Shaw. Dr. Shaw was not a witness. The value of Dr. Shaw's services was testified to by Dr. Lincoln as a witness. This testimony was objected to by the defendant on two general grounds: (1) That it was not shown that Dr. Shaw was ever employed by the plaintiff or with his authority; (2) that Dr. Lincoln failed to show that he was acquainted with the value of Dr. Shaw's services.

*4. MASTER AND SERVANT: damages: physician called by bystander: ratification.*

It was not shown who sent for Dr. Shaw, nor was it shown that anyone was expressly authorized by the plaintiff to send for him. The emergency was one which would justify any well-meaning person in assuming authority from the plaintiff to call a physician to his aid. Such assumption of authority might thereafter be challenged by the plaintiff, or it might be ratified by acquiescence. The very act of attempting to prove the value of the services was itself an express ratification of the authority. Only the *defendant* repudiated it. Such objection was not available to the

defendant. As to the competency of Dr. Lincoln, he did testify at first that he did not know what Dr. Shaw considered his services worth. Thereafter, he testified to what he called a *minimum* value of $25. He was surely competent to testify to such minimum value, even though it would have been open to Dr. Shaw to prove greater value. The defendant was not injured by the minimum figure thus adopted. The amount thus fixed was so manifestly moderate, in the light of common experience, as to destroy the substance of appellant's complaint at this point. *Reuthemeier v. Nolte,* 179 Iowa 342. We reach our foregoing conclusions the more readily because of the clear merit of plaintiff's case. Under the statute, the defendant was presumed to be negligent. Such presumption is not overcome by the evidence. On the contrary, we think that the affirmative evidence of negligence is practically conclusive. The verdict was for $4,800. In the light of the injuries and disabilities resulting therefrom, as shown by the undisputed evidence, the amount of the verdict is very moderate.

5. EVIDENCE: opinion evidence: value of services: values manifestly moderate.

We find no prejudicial error in the record, and the judgment below is accordingly—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.